FILED
HARRISBURG, PA
MAY 2 1 2018
PER _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT.

IN THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL CURTIS REYNOLDS     ,          CASE #  3:18 CV-1093

          PETITIONER,

     VS.

UNITED STATES OF AMERICA   ,

          RESPONDENTS.

COURT MOTION UNDER RULE §60(D)(3) FRAUD OR   --

HAZEL-ATLAS MOTION= FOR FRAUD UPON THE COURT

OLIVER, 157 F.3D 150 (10th Cir. 1946);

"Without pains to label the form of the action or the remedy, Courts have NEVER HESITATED TO GRANT EQUITABLE RELIEF AGAINST A JUDGMENT,

THAT WAS PROCURED A PARTY'S OWN FRAUD.

[FEEMAN ON JUDGMENTS. VOLUME 3, Sec. 1213, page 2519. Hazel-Atlas, 322 US 238 (S.Ct. 1944).

A Hazel-Atlas must pass the following test: Herring, 424 F.3d 384 (3rd Cir. 2005);

1) It must be an intentional fraud –

FBI Agents Joseph Noone and Larry Whitehead did cooperate and work along side of Kevin Reardon, their informant, who, on or about April 23rd, 2005, did remove from 346 Scott Street, three inert handgrenades, known property of Daniel Reynolds, not this Petitioner, Kevin altering them by use of a 'brick' of 2500 firecrackers, also Daniel's property, left to be disposed of by recyclers on the 346 Scott Street property, March 19th, 2005.
     Kevin disassembled those two 'pineapple grenades', added the gunpowder obtained from the firecracker 'brick', drilled a hole into the body of the grenade fuses, and added the waxed green fuse that had been on the 'brick' of firecrackers. That fuse was cut to 6 inches in length and used on both 'pineapple grenades.'
     Kevin, with full FBI knowledge, did plant as "evidence' to be "found later by FBI seaches", one 'pineapple grenade' at 346 Scott Street, one 'pineapple grenade' at #315 Storage Unit, 100 Mundy Street, on or about April 21st, 2005.
     Kevin Reardon, with full FBI knowledge, did send;

     as was traced electronically by the FBI later,

all PA emails from 346 Scott Street, Nov. 10th-16th, 2005.

     Kevin Reardon, with full FBI knowledge, did send ;

     all NY emails from his Binghamton, NY home on Nov. 20-24th, 2005, that were charged against this Petitioner in case #05-CR-0493.

2)  by an officer of the Court;

   The FBI Officers, Jospeh Noone and Larry Whitehead were acting
as an integral part of the Prosecution team, thus are "officers of
the Court."
   The Prosecution was held by John Gurganus, who had, per his
oath of office and Supreme  Court holdings -

   "A duty to do a separate investigation of all evidence presented
   him by the FBI Officers working beneath him," and

   "Imputed knowledge of all information, including from police
   officers working under his direction, and his team,"
   Prosecution Attorneys Peter J. Smith and Stephen Cerrutti,
who acted in cases #10-3813 and 17-cv-0124, respectfully, as the
Prosecutions teams therein, are again "officers of the Court,"

   Judge Edwin M. Kosik, presdiing Judge, is also an "officer of
the Court," who, acting on his own outside of Judicial procedures
of the case #05-CR-0493, did personally phone and threaten the
defense eyewitness Joyce Reynolds with incarceration should she
appear at trial to testify, thus **witness tampering**. [See: **EXHIBIT 1**].

3)  **which is directed at the Court itself, and**;

   The witness tampering by the presiding Judge was designed to
hamper the Defense of Petitioner, the withholding of the **Brady**
exculpatory evidence within case #10-3813 since  2010, which has
held, since that date -

**proof of every fact claimed within question (1) herein of Fraud—**

prevented a full and fair defense to the charges, among which,
in 2006, thus **prior to the conviction of this Petitioner in 2007** -

**Hull**, 456 F.3d 133 (3rd Cir. 2006); held that


   Under 18 U.S.C. §16(A), the Court held that **"use'** requires **'active
employment'** of force, and therefore a degree of intent higher than
negligence. **Leocal**, 543 US 1, 9 (S.Ct. 2004).

   Section §16(b) gives Judges no more guidance than does the ACCA
provision as to what constitutes a substantial enough risk of force
to satisfy the statute. Accordingly, **Johnson's** holding with respect to
the imprecision of the serious potential risk standard is also clearly
applicable to §16(b). As with ACCA's residual clause, §16(b)'s definition
of a crime of violence, combines 'indeterminancy about how to measure
the risk posed by a crime with indeterminancy about how much risk it
takes for the crime to qualify as "a crime of violence.' 135 S.Ct. @2558.

### AFFIDAVIT OF : MICHAEL CURTIS REYNOLDS

That withheld statement, quoted again from question #1 is --

"FBI Agents Joseph Noone and Larry Whitehead did cooperate and work along side of Kevin Reardon, their informent, who on or about April 23rd, 2005, did remove from 346 Scott Street, three inert handgrenades, known property of Daniel Reynolds, **not this Petitioner**, Kevin Altering them by use of a 'brick' of 2500 firecrackers, <u>also Daniel's property</u>, left  to be disposed of by recyclers on the 346 Scott street property, March 19th, 2005.

Kevin disassembled those two 'pineapple grenades', added the gunpowder obtained form the firecracker 'brick', drilled a hole into the body of the greande fuses, and added the waxed green fuse that had been on the 'brick' of firecrackers. That fuse was cut to 6 inches in length and used on both 'pineapple grenades'.

Kevin, with full FBI knowledge, did **plant as 'evidence'**, to be 'found later by FBI searches', one pineapple grenade at 346 Scott Street, one pineapple grenade at #315 Storgae Unit, 100 Mundy Street, on or about April 21st, 2005.

Kevin Reardon, with full FBI knowledge, did send;

> as was traced electronically by the FBI later,
> <u>ALL PA EMAILS FROM 346 SCOTT STREET, NOV. 10-16th, 2005.</u>

Kevin Reardon, with full FBI knowledge, did send;

<u>ALL NY EMAILS FROM HIS BINGHAMTON, NY HOME ON NOV. 20-24th, 2005,</u>
<u>that were charged against this Petitioner in case #05-cr-0493.</u>

That the above given details of the contents of File #10-3813 are accurate, and have nver been, nor can they be denied by the Government Respondents, as each and every detail is true. Under Federal Rules of Civil procedures, which is not limited, as Rule 36 Admissions of Facts are, to only application within the one existing action(s), Rule 8(B)(6) states that the effects of a failure to deny any claim will result in the Court's acceptance of the facts as admitted by law.

This has been given in a Brief to the Court, in Third Circuit, in matter 16-4164, in a Hazel-Atlas Fraud Upon the Court matter to the Third District Court, in a §2241 filing, [which did also include six Rule 36 Admission of Facts forms, one each to US Attorneys Peter J. Smith, Stephen Cerrutti and John Gurganus. It was also served upon FBI Agents Joseph Noone and Larry Whitehead, with their boss, FBI Director Robert Meuller. Another one was served on presiding Judge Edwin M. Kosik. None denied a single fact of the above statement. **NOT ONE FACT, OR PART OF A FACT.** The statement thus stands as proven facts.

Michael Curtis Reynolds
Reg. #10671-023
FCI Greenville
PO Box 5000
Greenville, Ill. 62246

I hereby certify under penalty of perjury pursuant to Title 28 U.S.C. §1746 the above as true and correct.

/S/ *Michael Curtis Reynolds*

Dated :  04/23/2018

Michael Curtis Reynolds, RULE 36 ADMISSIONS OF FACTS  —   CASE NUMBER —

   PETITIONER,

   VS.

Warden T.G. Werlich, et. al.

   RESPONDENT.

ALL AREAS OF RESPONSES TO THE RIGHT HERE WILL BE NEATLY MARKED WITH [X] OR SHALL BE CONSIDERED MARKED AS TRUE RESPONSES.

| | TRUE | FALSE |
|---|---|---|
| 1) In file #10-3813, it does state that Informant Kevin Reardon did alter and **plant as evidence**, two 'pineapple style' handgreandes ? | | |
| 2) In file #10-3813, it does state that informant Kevin Reardon did **plant** as evidence one altered grenade at 346 Scott Street ? | | |
| 3) In file #10-3813, it does state that Informant Kevin Reardon did **plant** as evidence one altered grenade at 100 Mundy street, #315 unit ? | | |
| 4) In file #10-3813, it does state that Informant Kevin Reardon did so under the direction and knowledge of the FBI Office ? | | |
| 5) In file #10-3813, it does state that Kevin Reardon held access to both locations, 346 Scott Street and 100 mundy Street ? | | |
| 6) In file #10-3813, it does state that Informant Kevin Reardon sent emails, used as 'evidence' from 346 Scott Street, Nov. 10-16, 2005 ? | | |
| 7) In file #10-3813, it does state that Informant Kevin Reardon did send emails from his home address in Binghamton, NY Nov. 20-24, 2005 ? | | |
| 8) In file #10-3813, it does state that the FBI did TRACE electronically the emails in Pennsylvania to 346 Scott Street, not the Petitioner ? | | |
| 9) In file #10-3813, it does state that the Petitioner's computer was PHYSICALLY IMPOSSIBLE TO SEND EMAILS FROM, lacking any monitor ? | | |
| 10) US Attorney Peter J. Smith was fully aware and possessed the file, #10-3813, since 2010 and withheld its **BRADY** exculpatory evidence ? | | |

This sheet will be returned within thirty (30) days or be considered as being admitted to be <u>TRUE</u>. ALL <u>FALSE</u> responses will be provided with document proof of <u>FALSITY</u> or be considered as being admitted to be <u>TRUE</u>. This sheet, with any responses will be returned within thirty (30) days, or all responses will be considered to being admitted as being <u>TRUE</u>. No exceptions will be made to late responses.        SERVED ON: _____

DATED: _____

Under §16(b)...defendant's conviction of 'distribution of information related to a [destructive device] in violation of 18 U.S.C.S. §842(P)(2)(A) was vacated because -

possession of a [destructive device] did not qualify as the requisite 'federal crime of violence'.

US vs. Kozlowski, 647 F.Supp.2d 1045, 1048 (7th Cir. 2009);

"Mere possession of a document without some -
### ACTIVE EMPLOYMENT
is not sufficient to constitute 'use' of the document."

This PHYSICALLY IMPOSSIBLE 'USE' of the Petitioner's computer -
WHICH HAD NO MONITOR WITH WHICH TO SEE TO SEND ANY EMAILS
and not one piece of proof of sending or recieving any emails existed on the Petitioner's DESKTOP COMPUTER, as the FBI had claimed, and the Prosecution had charged under their Venue Response, [Petitioner filed a Motion challenging the Pennsylvania Venue to Prosecute for a crime that could not have been committed in Pennsylvania Nov. 10-23rd, 2005, as no monitor existed prior to that date, and Petitioner left the state of Pennsylvania on Nov. 16th, 2005];

"VENUE was proper, since the Petitioner sent and recieved emails -
FROM HIS DESKTOP COMPUTER
while in the Middle District of Pennsylvania, Nov. 10-16th, 2005."

No proof of 'teaching' was ever established, since no email 'evidence' by the FBI contained any such pictures, as shown in the [EXHIBITS 2-4], which, of course, [EXHIBITS 3 and 4] demonstrate that the FBI and Prosecution violated the search warrant nine days prior to its authorization on Dec. 21st, 2005.

Stating the facts on the next two pages, which will again be given in a conclusion, Court shall note:

1)  18 U.S.C. §373(a) states a section that has, as elements;

"the 'use', attempted 'use', or threatened 'use' of physical force against property or against the person of another..."
which is clearly within section 18 U.S.C. §16(a).

2)  18 U.S.C. §844 states -

(a) any person who --
    (2) violates subsection (p)(2) of section 842 [18 U.S.C. §842], shall be fined.....

So, §844 depends upon a valid §842(p)(2) violation...

§ 373.  Solicitation to commit a crime of violence

(a) Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571 [18 USCS § 3571]) fined not more than one-half of the maximum fine prescribed for the punishment of the crime solicited, or both; or if the crime solicited is punishable by life imprisonment or death, shall be imprisoned for not more than twenty years.

(b) It is an affirmative defense to a prosecution under this section that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant prevented the commission of the crime solicited. A renunciation is not "voluntary and complete" if it is motivated in whole or in part by a decision to postpone the commission of the crime until another time or to substitute another victim or another but similar objective. If the defendant raises the affirmative defense at trial, the defendant has the burden of proving the defense by a preponderance of the evidence.

(c) It is not a defense to a prosecution under this section that the person solicited could not be convicted of the crime because he lacked the state of mind required for its commission, because he was incompetent or irresponsible, or because he is immune from prosecution or is not subject to prosecution.


§ 844.  Penalties

(a) Any person who--
   (1) violates any of subsections (a) through (i) or (l) through (o) of section 842 [18 USCS § 842] shall be fined under this title, imprisoned for not more than 10 years, or both; and
   (2) violates subsection (p)(2) of section 842 [18 USCS § 842], shall be fined under this title, imprisoned not more than 20 years, or both.

(b) Any person who violates any other provision of section 842 of this chapter [18 USCS § 842] shall be fined under this title or imprisoned not more than one year, or both.

(c) (1) Any explosive materials involved or used or intended to be used in any violation of the provisions of this chapter or any other rule or regulation promulgated thereunder or any violation of any criminal law of the United States shall be subject to seizure and forfeiture, and all provisions of the Internal Revenue Code of 1954 [Internal Revenue Code of 1986] relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845(a) of that Code [26 USCS § 5845(a)], shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter [18 USCS §§ 841 et seq.].

(5) the term "Federal crime of terrorism" means an offense that--

(A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and

(B) is a violation of--

(i) section 32 [18 USCS § 32] (relating to destruction of aircraft or aircraft facilities), 37 [18 USCS § 37] (relating to violence at international airports), 81 [18 USCS § 81] (relating to arson within special maritime and territorial jurisdiction), 175 or 175b [18 USCS § 175 or 175(b)] (relating to biological weapons), 175c (relating to variola virus), 229 [18 USCS § 229] (relating to chemical weapons), subsection (a), (b), (c), or (d) of section 351 [18 USCS § 351] (relating to congressional, cabinet, and Supreme Court assassination and kidnaping), 831 [18 USCS § 831] (relating to nuclear materials), 832 [18 USCS § 832] (relating to participation in nuclear and weapons of mass destruction threats to the United States)[,] 842(m) or (n) [18 USCS § 842(m) or (n)] (relating to plastic explosives), 844(f)(2) or (3) [18 USCS § 844(f)(2) or (3)] (relating to arson and bombing of Government property risking or causing death), 844(i) [18 USCS § 844(i)] (relating to arson and bombing of property used in interstate commerce), 930(c) [18 USCS § 930(c)] (relating to killing or attempted killing during an attack on a Federal facility with a dangerous weapon), 956(a)(1) [18 USCS § 956(a)(1)] (relating to conspiracy to murder, kidnap, or maim persons abroad), 1030(a)(1) [18 USCS § 1030(a)(1)] (relating to protection of computers), 1030(a)(5)(A) [18 USCS § 1030(a)(5)(A)] resulting in damage as defined in 1030(c)(4)(A)(i)(II) through (VI) [18 USCS § 1030(c)(4)(A)(i)(II) through (VI)] (relating to protection of computers), 1114 [18 USCS § 1114] (relating to killing or attempted killing of officers and employees of the United States), 1116 [18 USCS § 1116] (relating to murder or manslaughter of foreign officials, official guests, or internationally protected persons), 1203 [18 USCS § 1203] (relating to hostage taking), 1361 [18 USCS § 1361] (relating to government property or contracts), 1362 [18 USCS § 1362] (relating to destruction of communication lines, stations, or systems), 1363 [18 USCS § 1363] (relating to injury to buildings or property within special maritime and territorial jurisdiction of the United States), 1366(a) [18 USCS § 1366(a)] (relating to destruction of an energy facility), 1751(a), (b), (c), or (d) [18 USCS § 1751(a), (b), (c), or (d)] (relating to Presidential and Presidential staff assassination and kidnaping), 1992 [18 USCS § 1992] (relating to terrorist attacks and other acts of violence against railroad carriers and against mass transportation systems on land, on water, or through the air), 2155 [18 USCS § 2155] (relating to destruction of national defense materials, premises, or utilities), 2156 (relating to national defense material, premises, or utilities), 2280 [18 USCS § 2280] (relating to violence against maritime navigation), 2280a [18 USCS § 2280a] (relating to maritime safety), 2281 through 2281a [18 USCS § 2281-2281a] (relating to violence against maritime fixed platforms), 2332 [18

USCS                                    1

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

18099041

USCS § 2332] (relating to certain homicides and other violence against United States nationals occurring outside of the United States), 2332a [18 USCS § 2332a] (relating to use of weapons of mass destruction), 2332b [18 USCS § 2332b] (relating to acts of terrorism transcending national boundaries), 2332f [18 USCS § 2332f] (relating to bombing of public places and facilities), 2332g [18 USCS § 2332g] (relating to missile systems designed to destroy aircraft), 2332h [18 USCS § 2332h] (relating to radiological dispersal devices), 2332i [18 USCS § 2332i] (relating to acts of nuclear terrorism), 2339 [18 USCS § 2339] (relating to harboring terrorists), 2339A [18 USCS § 2339A] (relating to providing material support to terrorists), 2339B [18 USCS § 2339B] (relating to providing material support to terrorist organizations), 2339C [18 USCS § 2339C] (relating to financing of terrorism), 2339D [18 USCS § 2339D] (relating to military-type training from a foreign terrorist organization), or 2340A [18 USCS § 2340A] (relating to torture) of this title;

(ii) sections 92 (relating to prohibitions governing atomic weapons) or 236 (relating to sabotage of nuclear facilities or fuel) of the Atomic Energy Act of 1954 (42 U.S.C. 2122 or 2284);

(iii) section 46502 (relating to aircraft piracy), the second sentence of section 46504 (relating to assault on a flight crew with a dangerous weapon), section 46505(b)(3) or (c) (relating to explosive or incendiary devices, or endangerment of human life by means of weapons, on aircraft), section 46506 if homicide or attempted homicide is involved (relating to application of certain criminal laws to acts on aircraft), or section 60123(b) (relating to destruction of interstate gas or hazardous liquid pipeline facility) of title 49; or

(iv) section 1010A of the Controlled Substances Import and Export Act [21 USCS § 960a] (relating to narco-terrorism).

As can bee seen plainly here, and is also reflected within the **ELEMENTS required to convict or even indict upon 18 U.S.C. §2339A and B, is the reciprocal charges of this 18 U.S.C. §2332a ELEMENTS requirement.**

**THUS NEITHER CHARGE CAN BE FOUND ABSENT THE OTHER'S ELEMENTS**

**18 U.S.C. §2332a WAS NEVER CHARGED IN ANY INDICTMENT---**

**WAS NEVER FOUND BY ANY JURY VERDICT---**

**THUS IT VIOLATES MATHIS, INTHAT A JUDGE MAY NOT FIND ELEMENTS.**

**IN ADDITION, MATHIS WOULD ALSO BAR A §3A1.4 ENHANCEMENT ALSO DOONE BY A JUDGE'S; NOT A JURY'S VERDICT OR FINDINGS ... AN ENHANCEMENT THAT WENT FROM 51 MONTHS TO 360 MONTHS !!**

USCS 2

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

18099041

5)   18 U.S.C. §2339A states —

To qualify, a violation under an impresive list, which —
DOES NOT INCLUDE ANY OF THE FOLLOWING STATUTES:
18 U.S.C. §373, 842(P)(2)(A), or what was never indicted for,
§2332a(a)(2)(B).

HOWEVER, 18 U.S.C. §2339A requires the §2332a staute be charged in the Indictment, and none exists, making that Indictment defective, and a missing required element to support the conviction of 18 U.S.C. §2339A absent, thus void.

§ 2332a.      Use of weapons of mass destruction

(a) Offense against a national of the United States or within the United States.   A person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction-

(1) against a national of the United States while such national is outside of the United States;

(2) against any person or property within the United States, and

(A) the mail or any facility of interstate or foreign commerce is used in furtherance of the offense;

(B) such property is used in interstate or foreign commerce or in an activity that affects interstate or foreign commerce;

## Rule 7. The Indictment and the Information

(a) When Used.

(1) *Felony*. An offense (other than criminal contempt) must be prosecuted by an indictment if it is punishable:

(A) by death; or

(B) by imprisonment for more than one year.

(2) *Misdemeanor*. An offense punishable by imprisonment for one year or less may be prosecuted in accordance with Rule 58(b)(1).

(b) Waiving Indictment.   An offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights—waives prosecution by indictment.

(c) Nature and Contents.

(c) Nature and Contents.

(1) *In General.* The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. For purposes of an indictment referred to in section 3282 of title 18, United States Code, for which the identity of the defendant is unknown, it shall be sufficient for the indictment to describe the defendant as an individual whose name is unknown, but who has a particular DNA profile, as that term is defined in that section 3282.

The argument is **not** that the indictment, either by words or the proper method, to have the actual statues themselves, 'did give fair warning to the defendant the charges, and **the ability to be acquitted of conduct not upheld by statute**, but that this missing essential element was not found by the trial jury itself in the Verdict Sheet, being absent entirely from the reasonable doubt test of the "fact-finder's", the jury, not the sentencing Judge, which **Mathis** bars, due to the split between the elements and the 'facts' of a case. Judges cannot find elements, only a Jury can, and this jury was not asked to find the essential element, **any essential element, found in the specific list of elements within 18 U.S.C. §2339A** –

**THE ONLY POSSIBLE ELEMENT BEING THAT OF 18 U.S.C. §2332a(a).** Since a jury did not find the essential element of:

"(B) such property is '**used**' in intereste or foreign commerce or in an '**activity**' that affects intereste or foreign commerce."

The claim, a clear perjury by FBI Officer Joseph Noone at Trial, of a 'confession' of a threat to the Standard Oil Company of Perth Amboy,' NJ.' does not exist, by paper, by video, nor by recording or statement signed by this Petitioner, and could not possibly exist, it remains perjury by the FBI, Joseph Noone in particular.

Pittston Co., 124 F.3d 508, 513 (3rd Cir. 1997);

"In 1954, Pittston purchased the facility now known as Tankport from STANDARD OIL COMPANY. Standard Oil had operated the facility as part of its' "Eagle Works" petroleum refinery,

**BUT THE FACILITY HAD NOT BEEN OPERATING SINCE THE 1930's.** Several tanks, pipes and other buildings were removed as a part of the "super-fund cleanup" projects in the 1980's, due to oil spillage there;

"The area was excavated in 1983 and...
**skimmed on a regular basis to...**
'COLLECT ANY OIL IN THE SOIL.'

Since there was no topsoil in the area, clearly there were no buildings upon that missing soil, thus no plant of any kind existed on that site since at least 1983...

**IT IS IN LEGAL TERMS, "NOT USED", NOR IS IT "ACTIVE".**

The PSI contains two false 'felony' acts in 1995... which our FBI, who has sole access to the NCIC used by the Probation Department to construct the PSI report, had fabricated in order to create, 'a history of violent crimes' that never existed, and to also enhance a charge, unconstitutionally, against this Petitioner. the charge of 18 U.S.C. §5845, 'possession of an unregistered handgrenade', was indicted by the Grand Jury twice, Dec. 5th and 20th, 2005. The first Count, [later altered to Count 5], was acquitted at trial. The second Count, indicted on Dec. 20th, 2005, was constructively amended, at sentencing by the Judge, to an unindicted charge of 18 U.S.C. §922(g)(1); 'possession of a handgrenade by a prior felon,' based upon the falsified PSI by the FBI.

**THE PETITIONER HAS NO "PRIOR FELONY" COUNTS WHICH ARE REQUIRED BY STATUTE TO SUPPORT ANY 18 U.S.C. §922(g)(1) charge.**

**THE GRAND JURY DID NOT AUTHORIZE ANY 18 U.S.C. §922(g)(1) charges!**

4) In fact deceives the Court;

No legal indictment of ANY charge against Petitioner existed, even in 2005.

US Attorneys Peter J. Smith and Stephen Cerrutti both withhold, to date, Brady exclusionary evidence which FBI Agents Noone, Whitehead and Prosecutor John Gurganus ALL knew of since 2005 as falsified and planted evidence, which the Court arrested, searched, indicted, convicted and sentenced upon in violation of the US Constitution.

That withheld statement, quoted again from question #1 is --

"FBI Agents Joseph Noone and Larry Whitehead did cooperate and work along side of Kevin Reardon, their informent, who on or about April 23rd, 2005, did remove from 346 Scott Street, three inert handgrenades, known property of Daniel Reynolds, **not this Petitioner**, Kevin Altering them by use of a 'brick' of 2500 firecrackers, **also Daniel's property**, left  to be disposed of by recyclers on the 346 Scott street property, March 19th, 2005.

Kevin disassembled those two 'pineapple grenades', added the gunpowder obtained form the firecracker 'brick', drilled a hole into the body of the greande fuses, and added the waxed green fuse that had been on the 'brick' of firecrackers. That fuse was cut to 6 inches in length and used on both 'pineapple grenades'.

Kevin, with full FBI knowledge, did **plant as 'evidence'**, to be 'found later by FBI searches', one pineapple grenade at 346 Scott Street, one pineapple grenade at #315 Storgae Unit, 100 Mundy Street, on or about April 21st, 2005.

Kevin Reardon, with full FBI knowledge, did send;

as was traced electronically by the FBI later,
ALL PA EMAILS FROM 346 SCOTT STREET, NOV. 10-16th, 2005.

Kevin Reardon, with full FBI knowledge, did send;

ALL NY EMAILS FROM HIS BINGHAMTON, NY HOME ON NOV. 20-24th, 2005,
that were charged against this Petitioner in case #05-cr-0493.

**Taylor**, 2016 US LEXIS 3928 (S.Ct.); "Such a prohibited conviction may result, for example, when a defendant is convicted after a jury verdict based on instructions that ommitted an **essential element of the offense**." **Cole vs. Young**, 817 F.2d 412, 426 (7th Cir. 1987).

The essential element of the **planted evidence by the FBI, and the emails sent by ther informant** was never told the jury, nor the elements of 'active employment', or 'use' or 'teaching' in relationship to the constructively, not actual posses'sed handgrenades herein--

IGNORING THE FACTS THAT THE FBI ASSISTED IN PLANTING THEM..

IGNORING THE FACTS THAT THE HANDGRENADES COULD NOT BE "USED"..

IGNORING THE FACTS THAT HULL, (3rd Cir. 2006) STATES THIS PETITIONER COULD NOT BE INDICTED, NOR CONVICTED ON ANY 18 U.S.C. §842(p)(2) charges.. [which are found under 18 U.S.C. §16(b) as not being a 'crime of violence"..

IGNORING THAT Baptiste, 841 F.3d 601, 617 (3rd. Cir. 2016); Dimaya vs. Lynch, 830 F.3d 1110 (9th Cir. 2015); Vivas-Ceja, 808 F.3d 719, 723 (7th Cir. 2015); and now Dimaya vs. Sessions, 15-1498 (S.Ct. 2018); ALL NOW HOLD THAT 18 U.S.C. §16(b) was and is Constitutionally void...

IGNORING TAHT 18 U.S.C. §2332a cannot be found in the indictment... IGNORING THAT, ABSENT ANY §2332a CHARGE THAT 18 U.S.C. §2339A and B. charges cannot be supported by indictment or conviction...

NOT TO MENTION IGNORING THAT THERE EXISTS NO "TEACHING" ELEMENT AS IT REMAINS PHYSICALLY IMPOSSIBLE TO SEND / RECEIVE EMAILS ABSENT ANY COMPUTER MONITOR, AND THAT NO PROOF OF "ALTERNATE MEANS" IS ON THE COURT's RECORD TO SUPPORT THE INDICTMENT OR CONVICTION...

[ ALTHOUGH, ON THAT SAME RECORD EXISTS PROOF THAT THE FBI HAD ELECTRONICALLY TRACED ALL PA EMAILS TO 346 SCOTT STREET, THEIR INFORMAN'S ADDRESS]...

WE WOULD STILL BE LEFT WITH THE WORLD'S MOST EMBARRASSING "EVIDENCE"...

HOW DOES AN INTELLIGENT COURT CONVICT ON A NON-EXISTING ENTITY BEING "THREATENED", THAT OF THE STANDARD OIL COMPANY OF PERTH AMBOY, NJ...

WHEN NOT ONLY DOES THE FACILITY NOT EXIST SINCE AT LEAST 1983...

BUT THE FBI CAN NOT PRODUCE ANY SUCH PROOF OF THE SWORN-TO "CONFESSION" BY THEIR CHIEF INVESTIGATOR ON THE CASE - AGENT JOSEPH NOONE ...

NOT BY VIDEO, NOT BY AUDIO, AND NOT EVEN A SIGNED STATEMENT BY THE SAME PETITIONER HEREIN OF ANY SUCH "CONFESSION",

BECAUSE NONE WAS EVER GIVEN, NO CRIME WAS EVER COMMITTED BY THIS PETITIONER.

"After Winship, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must not be simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. Woodby, 385 US @282. (Emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See: Johnson, 406 US, @362. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts."

The jury, in matter 05-cr-0493 was never given that fair opportunity, and, if the Government has its' way, will never have justice given this Petitioner.

The authority of the jury was usurped by the Prosecution, in order to convict a man they knew to be innocent, and whom other members of the "Department of Justice", as the US Attorney's Office is so labelled, in particular; US Attorneys Peter J. Smith and Stephen Cerrutti...

BOTH OF WHOM ALSO KNEW THIS PETITIONER WAS INNOCENT AND...
ASSISTED IN THE WITHOLDING OF THE CONTENTS OF FILE #10-3813, SINCE 2010...

JUST TO GUARANTEE THAT THE PROSECUTION'S WITHHELD EVIDENCE WAS NEVER BROUGHT TO THE COURT'S NOR ANY JURY'S ATTENTION...

The State here nevertheless urges, in effect, that "the prosecution can lie and conceal and the prisoner still has the burden to . . . discover the evidence," Tr. of Oral Arg. 35, so long as the "potential existence" of a prosecutorial misconduct claim might have been detected, id., at 36. A rule thus declaring "prosecutor may hide, defendant must seek," is not tenable in a system constitutionally bound to accord defendants due process. "Ordinarily, we presume that public officials have properly discharged their official duties." Bracy v Gramley, 520 US 899, 909, 138 L Ed 2d 97, 117 S Ct 1793 (1997) (quoting United States v Chemical Foundation, Inc., 272 US 1, 14-15, 71 L Ed 131, 47 S Ct 1 (1926) (internal quotation marks omitted)). We have several times underscored the "special role played by the American prosecutor in the search for truth in criminal trials." Strickler, 527 US, at 281, 144 L Ed 2d 286, 119 S Ct 1936; accord, Kyles, 514 US, at 439-440, 131 L Ed 2d 490, 115 S Ct 1555; United States v Bagley, 473 US 667, 675, n 6, 87 L Ed 2d 481, 105 S Ct 3375 (1985); Berger, 295 US, at 88, 79 L Ed 1314, 55 S Ct 629. See also Olmstead v United States, 277 US 438, 484, 72 L Ed 944, 48 S Ct 564 (1928) (Brandeis, J., dissenting). Courts, litigants, and juries properly anticipate that "obligations [to refrain from improper methods to secure a conviction] . . . plainly rest[ing] upon the prosecuting attorney, will be faithfully observed." Berger, 295 US, at 88, 79 L Ed 1314, 55 S Ct 629.

A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused. See 373 U.S., at 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215. This Court has held that the Brady duty extends to impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), and Brady suppression occurs when the government fails to turn

over even evidence that is "known only to police investigators and not to the prosecutor," Kyles, 514 U.S., at 438, 115 S. Ct. 1555, 131 L. Ed. 2d 490. See id., at 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"). "Such evidence is material 'if there is a reasonable probability that, had the evidence <*pg. 273> been disclosed to the defense, the result of the proceeding would have been different,'" Strickler v. Greene, 527 U.S. 263, 280, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (quoting Bagley, supra, at 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (opinion of Blackmun, J.)), although a "showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal," Kyles, 514 U.S., at 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490. The reversal of a conviction is required upon a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id., at 435, 115 S. Ct. 1555, 131 L. Ed. 2d 490.

CONCLUSIONS :

"Of greater importance, the individual interest in avoiding injustice is most compelling in the context of <u>Actual Innocence</u>. The quintessential miscarriage of justice is the execution of a person who is entirely innocent. Indeed, concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system. That concern is reflected, for example, in the ...

'fundamental value determination of our society that...

IT IS FAR WORSE TO CONVICT AN INNOCENT MAN THAN TO LET A GUILTY MAN FREE."

<u>In re: Winship</u>, 397 US 358, 372 (S.Ct. 1970).

See Also: T.  Starkie, Eviden ce 756 (1824)("The maxim in the law is...

THAT IT IS BETTER THAT NINETY-NINE...

OFFENDERS SHOULD ESCAPE, THAT THAT ONE INNOCENT MAN SHOULD BE CONDEMNED");

---THE CLAIMS RAISED, AND THE GOVERNMENT MUST DEFEND ALL OF THEM, ARE:   ----


----------
CLAIM #1 -
----------
FBI AGENTS NOONE AND WHITEHEAD COOPERATED IN THE
PLANTING OF EVIDENCE, TWO "LIVE" GRENADES

That withheld statement, quoted again from question #1 is --

"FBI Agents Joseph Noone and Larry Whitehead did cooperate and work along side of Kevin Reardon, their informent, who on or about April 23rd, 2005, did remove from 346 Scott Street, three inert handgrenades, known property of Daniel Reynolds, <u>not this Petitioner</u>, Kevin Altering them by use of a 'brick' of 2500 firecrackers, <u>also Daniel's property</u>, left  to be disposed of by recyclers on the 346 Scott street property, March 19th, 2005.

Kevin disassembled those two 'pineapple grenades', added the gunpowder obtained form the firecracker 'brick', drilled a hole into the body of the greande fuses, and added the waxed green fuse that had been on the 'brick' of firecrackers. That fuse was cut to 6 inches in length and used on both 'pineapple grenades'.

Kevin, with full FBI knowledge, <u>did plant as 'evidence'</u>, to be 'found later by FBI searches', one pineapple grenade at 346 Scott Street, one pineapple grenade at #315 Storgae Unit, 100 Mundy Street, on or about April 21st, 2005.

Kevin Reardon, with full FBI knowledge, did send;

<u>as was traced electronically by the FBI later;</u>
<u>ALL PA EMAILS FROM 346 SCOTT STREET, NOV. 10-16th, 2005.</u>

Kevin Reardon, with full FBI knowledge, did send;

<u>ALL NY EMAILS FROM HIS BINGHAMTON, NY HOME ON NOV. 20-24th, 2005,</u>
<u>that were charged against this Petitioner in case #05-cr-0493.</u>

**CLAIM #2 -**     GOVERNMENT, FBI AND PROSECUTORS JOHN GURGANUS, PETER J. SMITH, AND STEPHEN CERRUTTI, SOME SINCE DECEMBER, 2005, HAVE WITHHELD EXCULPATORY BRADY EVIDENCE OF ACTUAL INNOCENCE OF THIS PETITIONER.

File #10-3813 states each and every claim within Claim #1 as being true.

**CLAIM #3 -**     FBI AGENTS JOSEPH NOONE AND LARRY WHITEHEAD DID COOPERATE WITH INFORMANT KEVIN REARDON TO PLANT EVIDENCE, TWO "LIVE" GRENADES, IN ORDER TO ENTRAP THIS PETITIONER.

Kevin Reardon, working under the direct knowledge and consent of the FBI, did alter and plant two grenades, one at 346 Scott Street, the other at #15 Storage Unit, 100 Moody Street, on or about April 21st, 2005.

**CLAIM #4 -**     FBI WAS INFORMED OF THE LAW, BY THE PENNSYLVANIA STATE DISTRICT ATTORNEY'S OFFICE, THAT KEVIN REARDON HAD TAINTED BOTH 346 SCOTT STREET's AND 100 MOODY STREET's SEARCHES, AND THAT NO LEGAL SEARCH WARRANT COULD ISSUE.

Kevin Reardon had been removing, adding and altering evidence at both 'crime scenes' since on or about April 15th, 2005, therefore tainted all evidence at both locations, whereby the State of Pennsylvania had informed the FBI that no probable cause could legally issue in regards to the April 23rd, 2005 grenade incident. All searches were legally void.

**CLAIM #5 -**     FBI KNEW THAT KEVIN READON HAD SENT ALL PA AND NY EMAILS. FBI KNEW IT WAS PHYSICALLY IMPOSSIBLE FOR PETITIONER TO HAVE SENT/RECEIVED EMAILS FROM A DESKTOP COMPUTER THAT POSSESSED NO MONITOR WITH WHICH TO SEE EMAILS WITH.

Kevin Reardon, the only party with access to 346 Scott Street, did send and receive all Pennsylvania emails in case #05-cr-0493 from that address, as; (1) ALL PA EMAILS WERE TRACED ELECTRONICALLY TO 346 SCOTT STREET: (2) NO OTHER ELECTRONIC TRACING OF EMAILS ON RECORD SHOW ANY OTHER EMAILING LOCATIONS FOR SENDING/RECEIVING THESE EMAILS: (3) PETITIONER OWNED NO COMPUTER MONITOR FOR THE CHARGED DESKTOP COMPUTER HEREIN PRIOR TO NOV. 23RD, 2005, THIS "CRIME" NOV. 10-16th, 2005, THUS ENDED PRIOR TO THAT PURCHASE.

**CLAIM #6 -**     JUDGE KOSIK CONSTRUCTIVELY AMENDED THE 18 U.S.C §5845 INDICTED CHARGE TO 18 U.S.C. §922(g)(1).

Petitioner was indicted by the Grand Jury to an offense of 18 U.S.C. §5845, an 'unregistered handgrenade'. Judge Kosik, with false inforation, did, without Grand Jury apporval, alter that charge to 18 U.S.C. §922(g)(1), which has, by required elements, a 'prior felony' charge, which Petitioner did not possess.

----------
CLAIM #7 -
----------
     THE PSI WAS FALSIFIED BY THE FBI AGENTS NOONE AND WHITEHEAD, IN ORDER TO ENHANCE ILLEGALLY, THIS PETITIONER, AND CREATE A "PRIOR VIOLENCE" HISTORY THAT NEVER EXISTED.

The PSI was altered, which has only FBI authority to enter or change data, confirmed by a State Court, in regards to a false two-count charge(s) of:

        ASSAULT UPON OFFICERS - 1995 (JUNE).
          term on count one - 90 days jail time.
          term on count two - one year probation.

The Court confirmed that no such arrests, convictions, nor sentences ever took place, and that the State Court does not have the ability to enter or change data on the Federally-operated NCIC software. the PSI used for information, only the FBI has that access.

----------
CLAIM #8 -
----------
     THE CHARGE ON THE INDICTMENT, OF 18 U.S.C. §2232a IS ABSENT, THUS CAUSING A DEFECTIVE INDICTMENT, FATALLY FLAWED, AS CHARGE 18 U.S.C. §2339A and B DEPEND UPON A FINDING OF THE ESSENTIAL ELEMENT WITHIN §2332a.

18 U.S.C. §2339A depends upon a finding by the Jury of 'Federal Crime of Terrorism,' described within 18 U.S.C. §2332a. No Grand Jury Indictment charge exists, therefore it was not on the Jury Verdict sheet at trial, and not found 'beyond a reasonable doubt' as to existence herein. As the 18 U.S.C. §2339B depends upon §2339A, both charges then fail their essential elements test. They are thus void legally.

----------
CLAIM #9 -
----------
     LOOKING AT [EXHIBITS #2 and 4], NEITHER OF WHICH WERE, BY LEGAL DEFINITION, "USED", ACTIVELY EMPLOYED," or "TAUGHT", SINCE NONE WERE EMAILED, THEY FAIL CONVICTION.

[EXHIBITS #2 and 4], the 'electric match' picture, were never emailed. As the essential element requirement to 'teach' by email is not proven in the record, it is void for absency. No 'teaching' is in evidence.

----------
CLAIM #10 -
----------
     THE COMPUTER SEARCHES WERE NEVER LEGAL, NOR VALID AS EVIDENCE.

The computer searches were done on 12/12/2005, but the authority to have searched them was not even applied for until 12/21/2005, nine days later. The searhces were invalid, based off of planted evidence, by the FBI, then violated prior to issuance of authority to do so.

----------
CLAIM #11 -
----------
     THE SEARCH WARRANTS IN CASE #05-cr-0493 WERE NEVER SERVED ON THE PETITIONER, THEN LIED TO IN SWORN TESTIMONY BY FBI AGENT JOSEPH NOONE, CASE #13-30314, #05-cv-0549.

Joseph Noone submitted a sworn Affidavit that search warrants were served

on Petitioner in Jail on December 6th, 2005. However, the record shows
that Petitioner was not in the jail that morning, but at a local hospital,
that no FBI Agents spoke or visited him, that no papers were given him,
and no papers were mailed for or from Petitioner. No search papers have
ever been served in over twelve years now. Since, --

> "The Prosecution, and Police have a duty to serve the search
> papers, not the Petitioner a duty to seek them..."

Prosecution and Police have both violated Federal Rule 41, SERVICE.


-----------
CLAIM #12 -      JUDGE KOSIK DID THREATEN, THUS WITNESS TAMPER, THE
-----------      DEFENSES EYEWITNESS, JOYCE REYNOLDS. THIS WAS PROVEN BY
                 RULE 36  ADMISSIONS OF FACTS, WHICH GOVERNMENT CLAIMS
                 IMMUNITY THERETO.

Federal Rules of Civil Procedures , Rule 36, Admissions of Facts, has no
immunity from its enforcement, and has been determined to:

> "Be automatic in its function, that is, to hold that
> enforcement of the thirty day Default rule, found in
> Rule §36(a)(3) is not selective, nor does any agency
> have or may obtain immunity thereof its holdings."

Therefore, a Court Motion for the Default is not required, and any person
or agency so legally served a Rule 36 Admissions of Facts Motion is then
bound and compelled to respond, or face its admissions as being those of
a Judicial Admission, unassailable by even Trial testimony, as final.
To hold that the comment within [EXHIBIT 1] of:

> "Moreover, the government never admitted 'under Rule 36 and 56 in
> Hazel-Atlas Motion,' any of Reynolds' claims.
>
>     Reynolds is under the mistaken belief that the Government is
> under some obligation to answer allegations, which--
>
> if not answered, are admitted. -- That simply is not the case."

Harrison vs. Ammons, 2009 US Dist. LEXIS 75619 (3rd. Dist.)(Judge Conner,
presiding): "facts or opinions which a party admits are considered as
conclusive and binding."

   US vs. Kasuboski, 834 F.2d 1345, 1350 (7th Cir. 1987); "Defendants
failed to respond to requests for admissions under Rule 36(a), and
therefore, their admissions were deemed admitted."

   In the Hazel-Atlas Motion of this Petitioner, the Government was
required by law to deny the claims, and failing to do so has no 'immunity'
for the Government to its holdings. The Government thus admitted the claim:

To Judge Kosik:   "You personally did contact witness Joyce Reynolds
                   and warn her not to testify."

THUS WITNESS TAMPERING DID OCCUR BY THE PRESIDING JUDGE.

To Judge Kosik:   "You were fully aware of a <u>Franks</u> violation Joyce
                   Reynolds would testify to."

THUS DENIAL OF A CONSTITUTIONAL RIGHT DID OCCUR BY JUDGE KOSIK.

And the Government response?

"Apparently the request went unanswered." and "Apparently Joyce
Reynolds' testimony owuld have related to Agent Whitehead's Affidavit
of Probable Cause."

SO, THE GOVERNMENT ADMITS THE REQUEST FOR ADMISSIONS DID DEFAULT,
THAT JUDGE KOSIK DID TAMPER WITH THE WITNESS JOYCE REYNOLDS, THAT THE
TESTIMONY WAS RELEVANT TO THE FINDING OF PROBABLEE CAUSE, THAT THE
AFFIDAVIT OF PROBABLE CAUSE WAS ALSO KNOW TO BE PERJURED, SINCE JOYCE*S
TESTIMONY WOULD HAVE COUNTERED IT.

Also, we could add our latest round of admissions of facts, by the
two FBI officers Noone and Whitehead herein, their boss, FBI Director
Robert Meuller, by Peter J. Smith, John Gurganus and Stephen Cerrutti,
all Prosecution'7 S Attorneys herein, and again, our own Judge Kosik.
All of whom admitted our question #1 claim as <u>100% true and fact</u>.

   <u>Planted evidence with FBI involvement, Informant email evidence</u>
      <u>fabricated both in Pennsylvania and New York, and more.</u>

But, more importantly, the requirement under 28 U.S.C. §2241 states;

      "A Petitioner must prove more than mere legal insufficiency;
   a Petitioner must also prove <u>Factual as well as Actual Innocence."</u>

In this matter, ther eis Factual Fraud Upon the Court, all withheld
<u>Brady</u> exculpatory evidence within our favorite folder, <u>file #10-3813</u>,
The admissions of Fcats of <u>FBI evidence planting</u>, their own informant
<u>fabricating the email 'evidence' herein</u>, and twelve years of coverups.

Our 'mere legal insufficiency' is exceeded by the laws under <u>Mathis</u>,
of:

  No element of <u>'use'</u> exists with a constructively-only 'possessed'
     handgrenade from 3000-9000 miles distance.

  No element of <u>'use'</u> or <u>'teaching'</u> exists with a picture never emailed
     to anyone, since no argument can overcome the sheer <u>PHYSICAL</u>
     <u>IMPOSSIBILITY TO HAVE SENT/RECEIVED EMAILS FROM A COMPUTER</u>
     <u>HAVING NO MONITOR ON IT WITH WHICH TO PHYSICALLY DO SUCH ACTS.</u>

  No element of §2332a exists within the Indictment to then find a
     violation of either §2339A or B.

  No 'prior felony' proven by the falsified PSI report by the FBI used
     herein, to consturctively alter a §5845 charge to a §922(g)(1)
     offense at sentencing.

In addition, Kevin sent emails from 346 Scott Street and his home in Binghamton New York, using Petitioner's hacked email accounts, and sent ALL the PA and NY emails in this matter, Case #05-cr-0493.

<u>The FBI electronically traced these emails to
346 Scott Street and Binghamton, NY.</u>

The Government cannot and will not contend that each and every fact just stated is found within File #10-3813, [again requesting Judicial Notice, §201(c)(2) of these facts within that file, located at: US Attorney's Office, 228 Walnut Street, Harrisburg, PA 17108, since 2010,

<u>BRADY</u> withheld exculpatory evidence.

KNOWN TO THE FBI SINCE PRIOR TO THIS PETITIONER'S ARREST
on December 5th, 2005.

So, speed on release for this sham crime is of the essence herein. This Petitioner prays and hopes this Court will uphold the §2243 timelimit of twenty-eight (28) days until hearing for release, since there exists no need to drag out release of Petitioner due to Government rebuttal that they cannot perform.

File #10-3813 should be compelled, as requested by Motion, to speed the release of one who is truly innocent from prison forthwidth.

The government and Court need only phone and fax a copy of the file #10-3813 from US Attorney Peter J. Smith, who last possessed it, to answer any doubts as to the stated contents herein of the file.

The court will not find any discrepancies, since this matter, in WV Case #17-0124 was also served Rule 36 Admissions of Facts to six parties herein, and --

NOT ONE OF THE SIX PARTIES DENIED THE CONTENTS OF FILE #10-3813
not the two FBI agents, or their boss, FBI Director Meuller,
not the Prosecution, John Gurganus, nor US Attorneys Peter J. Smith
or Stephen Cerrutti, nor --- wait for it ---

THE PRESIDING JUDGE EDWIN M. KOSIK --

who tampered and admitted to it, the eyewitness Joyce Reynolds.
testimony, threatening to jail her if she testified.

THAT LAST FACT WAS WITNESSED BY A PROSECUTION WITNESS, THUS THE GOVERNMENT <u>CANNOT DENY HER TESTIMONY AS FALSE</u>, SINCE SHE TESTIFIED FOR THEM AT TRIAL.

So, please do not extend the response brief by so much as a day past the §2243 twenty-three (23) days limit, followed by the hearing within five(5) days. Petitioner has been held illegally for twelve years already.

It is time for him to go home. Not later this summer, <u>NOW</u>.

So, there remains no legal question of the ACTUAL INNOCENCE of this Petitioner, and this demand, under F.R.Evid. §201(c)(2), wherein:

<u>at the office of:</u>

United States Attorney' Office
228 Walnut Street
Harrisburg, PA 17108

Last in the possession of Attorney Peter J. Smith, or possibly Stephen Cerrutti, of that same office, inside <u>File #10-3813</u> is the following:

FBI Agents Joseph Noone and Larry Whitehead did cooperate and work along side of Kevin Reardon, their informant, who, on or about April 23rd, 2005, did remove from 346 Scott Street, three inert handgrenades, known property of Daniel Reynolds; not this Petitioner, Kevin altering them by use of a 'brick' of 2500 firecrackers, also Daniel's property, left to be disposed of by recyclers on the 346 Scott Street property, March 19th, 2005.

Kevin disassembled those two 'pineapple grenades', added the gunpowder obtained from the firecracker 'brick', drilled a hole into the body of the grenade fuses, and added the waxed green fuse that had been on the 'brick' of firecrackers. That fuse was cut to 6 inches in length and used on both 'pineapple grenades.'

Kevin, with full FBI knowledge, did plant as "evidence" to be "found later by FBI seaches", one 'pineapple grenade' at 346 Scott Street, one 'pineapple grenade' at #315 Storage Unit, 100 Mundy Street, on or about April 21st, 2005.

Kevin Reardon, with full FBI knowledge, did send;

as was <u>traced electronically by the FBI later,</u>

<u>all PA emails from 346 Scott Street, Nov. 10th-16th, 2005.</u>

Kevin Reardon, with full FBI knowledge, did send ;

<u>ALL NY emails frim his Binghamton, NY home on Nov. 20-24th, 2005,</u> that were charged against this Petitioner in case #05-cr-0493.

NOW, SHOULD THE GOVERNMENT CONTINUE TO WISH TO CONTEST THIS SET OF FACTS:

The simply set a Hearing date for them to present a full, unredacted copy of the entire contents of File#10-3813, a copy supplied to this Petitioner and Court prior to such date, and prove Petitioner's claims as false. If not, then conceed the points now.

<u>REMEDY SOUGHT</u>

<u>Immediate release of ACTUALLY INNOCENT Petitioner</u>, failing this, a full, unredacted copy of the File contents of #10-3813 be provided both Petitioner and this Court, within 5 days of this Motion's filing, and a hearing on the F.R.Evid. §201(e) ENTITLED HEARING HELD, WITHIN 10 DAYS OF <u>THIS MOTION'S FILING.</u>

4/23/2018                    /S/  _Michael Curtis Reynolds_

Pg. 17

As for the witness tampering alleged to have been committed by the trial judge, there is simply nothing in the record to support the claim other than a handwritten document apparently sent to Judge Kosik entitled "Rule 36 admissions of fact." That document indicated that "ANY UNRETURNED ADMISSION OF FACTS SHEET WILL BE DEEMED AS COMPLETELY TRUE, NO EXCEPTIONS WHATSOEVER!" See Reynolds § 2255 Motion, p. 26. The document included a statement, "You personally did contact witness Joyce Reynolds and warn her not to testify." It was followed by a statement, "You were fully aware of a Franks violation Joyce Reynolds would testify to."[14] Apparently the request went unanswered, and apparently Joyce Reynolds' testimony would have related to Agent Whitehead's affidavit of probable cause.

Reynolds claims that there was "known perjury before Grand Jury" and that his attorney "admitted knowledge of perjury in presence of prosecution team, did nothing. Prosecution superceded using same known perjured documents.....Admitted by all under Rule 36 and 56 in Hazel-Atlas Motion." See Reynolds § 2255 Motion, p. 6.

Moreover, the government has never admitted "under Rule 36 and 56 in Hazel-Atlas Motion" any of Reynolds' claims. Reynolds is under the mistaken belief that the Government is under some obligation to answer allegations which, if not answered, are admitted. That simply is not the case.



FILED
SCRANTON

DEC 12 2005

Per _____

DEPUTY CLERK

## Electric match construction

wooden
popsickle stick

stereo
wires

hot
glue

two
electric
matches

This document, given to
Attorney #1, Isabell Williams
gave this to Petitioner
on December 15, 2005, at
the only meeting she had
with Petitioner before
she was terminated.

This document, taken from
Petitioners computer, has
been uploaded to another
computer prior to printing.
Meaning this was taken from
that computer prior to the
date below.

Note the computer path of the document, it states it is from Drive E:
That computer has no Drive E. It has only a Drive C:, proving this was
sent to another computer first, then printed out. The problem is what
date it was printed out of. This date preceded the issuance of the search
warrant by nine days. Clearly a violation under the Fourth Amendment.

filc://E:\Export\_00000FTK\_81000FTK\electric match[95578].JPG          2



12/12/2005 3:30 PM

FOURTH AMENDMENT SEARCH WARRANT BREECH

In the following documents, mentioned within the Brief, and enclosed in the original Sept. 2007 Brief, is the document drawings, from the computer seized on Dec. 5th, 2005, actually, computers, as there were two of them, a desktop, and a german laptop. The original warrant declared "a computer". This created a problem, as it is not particular enough to say which computer under the requirements for a search warrant. Thus, the Government needed permission to search both computers to get what they, 'suspected' was on them. The issue and legal problem is, that the Government had already uploaded the Hard Drive, C:, from the Petitioner's computer, to a Drvie E:, on another.

## Conclusion

10. Your affiant believes, based upon the information above, including the information identified in FBI Agent Larry J. Whitehead's Master Affidavit that has has been incorporated by reference, there is probable cause to believe that evidence, fruits, and instrumentalities of the crimes enumerated above, as particularly described in Attachment B of the Search Warrant Application, will be located on the computers seized from MICHAEL CURTIS REYNOLDS.

11. Therefore, based upon the foregoing, your affiant seeks authority to search the computers, which were seized from MICHAEL CURTIS REYNOLDS on December 5, 2005.

12. Your affiant, having signed this addendum under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information and belief.

Joseph F. Noone
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 21st day of December 2005, at Wilkes Barre, Pennsylvania.

MALACHY E. MANNION
United States Magistrate Judge

The warrant request is on Dec. 21, 2005, but the drawing was already uploaded prior to Dec.

FILED
WILKES BARRE
DEC 21 2005
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

[DEC. 21, 2005]

FOURTH AMENDMENT SEARCH WARRANT BREECH

In the following ~ ─s, mentioned within the Brief, and enclosed in the original Sept. 2007 Brief, is the document drawings, from the computer seized on Dec. 5th, 2005, actually, computers, as there were two of them, a desktop, and a german laptop. The original warrant declared "a computer". This created a problem, as it is not particular enough to say which computer under the requirements for a search warrant. Thus, the Government needed permission to search both computers to get what they, 'suspected' was on them. The issue and legal problem is, that the Government had already uploaded the Hard Drive, C:, from the Petitioner's computer, to a Drvie E:, on another.

Conclusion

10.  Your affiant believes, based upon the information above, including the information identified in FBI Agent Larry J. Whitehead's Master Affidavit that has been incorporated by reference, there is probable cause to believe that evidence, fruits, and instrumentalities of the crimes enumerated above, as particularly described in Attachment B of the Search Warrant Application, will be located on the computers seized from MICHAEL CURTIS REYNOLDS.

11.  Therefore, based upon the foregoing, your affiant seeks authority to search the computers, which were seized from MICHAEL CURTIS REYNOLDS on December 5, 2005.

12.  Your affiant, having signed this addendum under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information and belief.

Joseph F. Noone
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 21st day of December 2005 at Wilkes Barre, Pennsylvania.

MALACHY E. MANNION
United States Magistrate Judge

EXHIBIT #

- 34 -

[DEC. 21, 2005]

The warrant request is on Dec. 21, 2005, but the drawing was already uploaded prior to Dec. 12/2009, as you will see.

---

Exhibit 3

FILED
SCRANTON
DEC 12 2005
Per_____
DEPUTY CLERK
Page 1 c

[DEC. 12, 2005]

El.      .tch construction

wooden
popsickle stick

stereo
wires

hot
glue

This document, given to Attorney #1, Isabell Wil gave this to Petitioner on December 15, 2005, at the only meeting sha had with Petitioner before she was terminated.

This document, taken from Petitioners computer, ha been uploaded to another computer prior to printi. Meaning this was taken f. that computer prior to t date below.



Note the computer path of the document, it states it is from Drive E: That computer has no Drive E. It has only a Drive C:, proving this was sent to another computer 'first,' then printed out. The problem is that date it was printed out on. This date preceded the issuance of the search warrant by nine days. Clearly a violation under the Fourth Amendment.

file://E:\Export\_00000FTK\_81000FTK\electric match[9557S].JPG      12/12/2005 3:30

[DEC. 12, 2005]

10671-023

-Michael Curtis Reynolds
Greenville/40Th 74th Str.
- Federal Correctional Institute
Reg#10671023/Po Box 5000
Greenville, IL 62246-5000
- United States

RECEIVED
HARRISBURG PA

MAY 2 1 2018

PER _____
DEPUTY CLERK